# United States Court of Appeals
## For the First Circuit

No. 24-1425

ROHINI MEKA; SURESH CHIRUMAMILLA, individually and as father and
next friend of P.C.,

Plaintiffs, Appellants,

v.

HANI HADDAD; VALLEY WOMEN'S HEALTH GROUP, LLC,

Defendants, Appellees,

JANE/JOHN DOE,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí and Aframe, Circuit Judges.

Ingrid A. Halstrom, with whom Halstrom Law Offices, P.C., was
on brief for appellants.

Michael R. Lavoie, with whom Dennis R. Anti, and Morrison
Mahoney LLP, were on brief for appellees.

October 9, 2025

**BARRON**, **Chief Judge**.  In this appeal, a husband and wife challenge a grant of summary judgment that dismissed their claim against, among others, a doctor and the limited liability company for which he works.  The plaintiffs filed the claim in the United States District Court for the District of Massachusetts, alleging that the defendants violated Massachusetts law because the doctor failed to obtain the wife's informed consent before he performed a forceps-assisted delivery of her son that fractured her pelvis.  The plaintiffs argue on appeal that the grant of summary judgment must be vacated because the District Court abused its discretion in striking their expert witnesses or, in the alternative, that the grant of summary judgment must be reversed because a reasonable juror could supportably find for them on their claim based on "common knowledge."  We affirm.

## I.

The plaintiffs, Rohini Meka and her husband, Suresh Chirumamilla, filed suit on September 18, 2020, in the District of Massachusetts.  They named as defendants Dr. Hani Haddad, Valley Women's Health Group, LLC, and Jane/John Doe (collectively, "the defendants").  The complaint, premised on diversity jurisdiction, see 28 U.S.C. § 1332(a), asserted various Massachusetts law claims stemming from Meka's treatment during the labor and delivery of her son, Pranav Chirumamilla.  This appeal concerns only the

plaintiffs' claim that Dr. Haddad, in violation of Massachusetts law, failed to obtain Meka's informed consent before performing a forceps-assisted delivery of her son because he failed to instruct Meka of the risks associated with that procedure prior to the operation.[1]  The claim alleges that the use of the procedure resulted in Meka suffering a pelvic fracture.

On November 21, 2023, the defendants filed a Motion to Strike Expert Testimony of Plaintiffs' Experts ("Motion to Strike") on the ground that the defendants had attempted on multiple occasions to schedule depositions of the plaintiffs' experts but that the plaintiffs, in violation of Federal Rule of Civil Procedure ("FRCP") 26(b), had neither offered any dates for the depositions nor made "any good faith effort to make their experts available for deposition."  See Fed. R. Civ. P. 26.  The defendants argued that, accordingly, FRCP 37(c)(1) required the exclusion of the testimony by the plaintiffs' experts because the plaintiffs' failure to produce their experts for deposition was neither "substantially justified [n]or harmless."  (Quoting Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001).)  The plaintiffs did not file a response to the motion.

---

[1] The complaint also asserted a negligence claim against Dr. Haddad.  However, that claim, which was also dismissed by the District Court, is not at issue on appeal.

On December 11, 2023, the District Court granted the Motion to Strike, noting that, under the local rules, the plaintiffs' opposition to the Motion to Strike was due on December 5, 2023, but that "no opposition or request for an extension was filed." The plaintiffs did not file anything on the docket or otherwise acknowledge the ruling.

On February 2, 2024, the District Court held a scheduled pretrial status conference at which plaintiffs' counsel failed to appear. The District Court thereafter entered an order for plaintiffs to show cause as to why the action should not be dismissed for failure to prosecute.

On February 12, 2024, the plaintiffs filed a response. In it, they asserted that plaintiffs' counsel "ha[d] been experiencing issues (and continue[d] to experience issues) with her e-mail server and access" and that, although she had been "logging into the PACER portal once or twice a week to check the dockets on all pending cases," she nonetheless "inadvertently missed the [status] conference" because she did not receive the PACER alert changing the time of the conference from 1:00 P.M. to 11:00 A.M.[2] The filing did not address -- or mention -- either

---

[2] The order changing the time of the conference was entered on January 30, 2024. Plaintiffs' counsel explained that the last time she had checked PACER before the conference took place was on either Friday, January 26, or Monday, January 29.

the order granting the Motion to Strike or the plaintiffs' failure to oppose that motion.

The day after, the defendants filed a response to the plaintiffs' filing. In it, they argued that the plaintiffs' claims should be dismissed for failure to prosecute because of the plaintiffs' failure to respond to either their Motion to Strike or the order granting that motion, as well as their "long-standing and protracted failure . . . to provide their experts for deposition," "to monitor the docket," and to "inform the Court promptly of any issues." The defendants further contended that, although plaintiffs' counsel represented that she had been monitoring the docket since December, both the Motion to Strike and the District Court's order granting that Motion "were clear entries on the docket at that time," and "yet plaintiffs' counsel makes no mention or provides any explanation why she did not take any action in response to those entries at that time."

The defendants attached as an exhibit to this filing a December 13, 2023 email from plaintiffs' counsel's personal email to defendants' counsel. The email stated that plaintiffs' counsel "just realized [she] had not let [defendants' counsel] know about the issue [she has] been having with [her] email," and asked that "[f]or the time being," he "please email [her] [there] instead of [her] [work] email address."

Shortly thereafter, the District Court entered an order indicating that it would not dismiss the action "at this time," given the plaintiffs' explanation of the "circumstances surrounding [p]laintiff[s'] counsel's failure to appear for the . . . pretrial conference." The District Court scheduled trial to begin on April 29, 2024.

On February 16, 2024, the defendants filed a motion requesting that the District Court clarify whether its December 11, 2023 order granting the Motion to Strike remained in effect. The defendants argued that the order remained in effect because the plaintiffs had not "mention[ed] or provide[d] any basis to reconsider and vacate" that order and that, in any event, no such basis existed.

In response to this motion, the District Court "clarifie[d] that it ha[d] not reconsidered or vacated its prior order striking [p]laintiffs' expert testimony" and that the order "remains in effect." Thereafter, on February 20, 2024, the defendants filed a motion for summary judgment to dismiss all the plaintiffs' claims. In the motion, the defendants argued that this result was required because, under Massachusetts law for a claim alleging medical malpractice, expert testimony is "necessary for any prima facie case," but, given the order granting the Motion to Strike, the plaintiffs "have no medical experts" for trial.

The plaintiffs responded to the defendants' motion for summary judgment in a filing styled as both an opposition to that motion and a cross-motion to vacate the December 11, 2023 order granting the Motion to Strike. The plaintiffs argued in this filing that, although expert testimony is "generally" required under Massachusetts law to support a claim alleging medical malpractice, a reasonable jury could make the necessary findings to rule for them on all their claims based on "common knowledge" and Meka's medical records. The plaintiffs also argued, however, for vacating the order striking their expert witnesses. They did so by pointing to the "issues with [counsel's] e-mail server," asserting that their counsel had "received no notice of the Defendants'" Motion to Strike. They also contended that vacatur was warranted because, they claimed, the defendants had not made any attempt to first confer, as required under the local rules. (Citing L.R., D. Mass. 7.1, 37.1.) The plaintiffs further asserted that plaintiffs' counsel did not "bec[o]me aware of the [defendants'] motion" until the Court granted it as unopposed.

In reply, the defendants argued that, under Massachusetts law, the plaintiffs' claims could not go forward unless they were supported by expert testimony. They also urged the District Court to deny the plaintiffs' cross-motion to vacate the order granting the Motion to Strike, which they characterized

as a request for reconsideration of that order pursuant to FRCP 54(b).

On March 28, 2024, the District Court granted defendants' motion for summary judgment. The District Court concluded that the plaintiffs could not prove any of their claims without supporting expert medical testimony. The District Court also declined plaintiffs' motion to vacate its order striking the testimony of the plaintiffs' experts, which the District Court treated as a motion for reconsideration of that order.

The District Court concluded that, "[u]nder these circumstances," it would not be "in the interests of justice" to reconsider its prior order "given the degree of tardiness and [the plaintiffs'] lack of explanation, and the prejudice to [the] [d]efendants and court administration in reconsidering the issue at this late stage." In describing "these circumstances," the District Court explained,

> This is [the] [p]laintiff[s'] first request related to, or even acknowledgement of, the December 11, 2023 order, despite counsel's awareness since at least mid-December of the order. Plaintiff[s'] counsel provided no excuse for waiting to request reconsideration until mid-March, with trial scheduled in April. Plaintiff[s'] counsel also has not explained why she did not notify the court or take steps to rectify the email issue when it was first discovered in December or earlier. In addition, Plaintiff[s'] counsel has not adequately addressed the underlying reasons the experts were stricken under

> Rule 37(c)(1) -- failing to make them available for deposition.

(Citation omitted.)

This appeal timely followed.

## II.

### A.

If the plaintiffs were to succeed on their challenge to the District Court's denial of their cross-motion to vacate its December 11, 2023 order granting the defendants' Motion to Strike, then the District Court's order granting summary judgment to the defendants on the plaintiffs' informed-consent claim could not stand. That is so because the District Court's order granting summary judgment to the defendants on that claim is based solely on the plaintiffs' having failed to put forward any expert testimony that could support it. We thus begin with the plaintiffs' challenge to the District Court's ruling denying the plaintiffs' cross-motion to vacate the December 11, 2023 order granting the defendants' Motion to Strike.[3]

---

[3] There is no merit to the defendants' contention that, because the notice of appeal references only the order granting summary judgment, we lack appellate jurisdiction to review the denial of plaintiffs' cross-motion to vacate. See United States ex rel. Booker v. Pfizer, Inc., 847 F.3d 52, 55 (1st Cir. 2017); see also Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC, 994 F.3d 77, 82 (1st Cir. 2021) ("Once a district court enters final judgment . . . antecedent interlocutory orders typically merge into the judgment and become subject to appellate review.").

As is evident from the District Court's ruling, it treated the plaintiffs' cross-motion to vacate the order as a motion for reconsideration of that order. The District Court then determined that reconsideration was not warranted due to the plaintiffs' multi-month long delay in "request[ing] reconsideration" and their failure to address critical issues when so requesting.

On appeal, the plaintiffs refer to their filing to the District Court as a "motion to vacate" the December 2023 order granting the defendants' Motion to Strike rather than as a motion to reconsider that order. They do not, however, develop any argument that it was error for the District Court to treat that filing as a motion for reconsideration.

Accordingly, we review the District Cort's decision as a denial of a motion for reconsideration. See Ortega Cabrera v. Mun. of Bayamón, 562 F.2d 91, 102 n.10 (1st Cir. 1977) (concluding that a party's failure to make an argument "on appeal" means that the party "waived any such claim"). And reviewing this decision for abuse of discretion, Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014), we find none.

The plaintiffs contend that the District Court abused its discretion because the defendants would not have been prejudiced if the order were vacated, the defendants' Motion to Strike did not comply with local rules, and less draconian

sanctions were available. None of these arguments, however, respond to the District Court's refusal to <u>reconsider</u> the order. Instead, they attack the order directly.[4] Indeed, the plaintiffs failed to explain how it was an abuse of discretion for the District Court to decline to reconsider the order based on the plaintiffs' failure to have sought its reconsideration for over three months and to have done so only one month before trial. Nor do the plaintiffs explain how the District Court erred in concluding that the plaintiffs, in seeking reconsideration, failed to address the "underlying reasons the experts were stricken," that is, "failing to make [the experts] available for deposition." We thus see no basis for concluding that the plaintiffs have shown that the District Court abused its discretion in declining to reconsider its order granting the Motion to Strike.

**B.**

We also see no merit in the plaintiffs' alternative argument that the District Court's order granting summary judgment on their informed consent claim must be reversed because a

---

[4] We note, too, that in attacking the District Court's decision to grant the Motion to Strike, the plaintiffs do not raise any concerns with the District Court's reliance on FRCP 37(c)(1) to sanction the plaintiffs for violating FRCP 26(b). <u>See</u> Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . ."). As such, any argument on this score is deemed waived. <u>See</u> <u>Ortega Cabrera</u> v. <u>Mun. of Bayamón</u>, 562 F.2d 91, 102 n.10 (1st Cir. 1977).

- 11 -

reasonable juror could find for them on this claim even in the absence of supporting expert testimony. They argue that deposition testimony establishes that "Dr. Haddad failed to offer them a cesarean section and failed to disclose any risks (either maternal or fetal) associated with a forceps (vaginal) delivery," and that expert testimony is not required to establish causation because, based on Meka's medical records and testimony that will be introduced at trial, a "jury [would be] able to reasonably conclude that the [pelvic] fracture occurred during [the] forceps delivery."

The defendants question the plaintiffs' characterization of Massachusetts law. They contend, based on Precourt v. Frederick, 481 N.E.2d 1144, 1148-49 (Mass. 1985), that to prove a claim alleging a failure to obtain informed consent for a medical procedure, a plaintiff must prove that the assertedly undisclosed risk posed by the medical procedure was non-negligible and that the failure to disclose that risk caused the alleged injury. The defendants then further contend that, in the plaintiffs' case, neither of these elements of their informed consent claim could be established under Massachusetts law without expert testimony. Reviewing de novo while taking the facts and all reasonable inferences in the light most favorable to the plaintiffs, see Minturn v. Monrad, 64 F.4th 9, 13-14 (1st Cir. 2023), we agree with the defendants as to the need for expert testimony concerning

- 12 -

the nature of the undisclosed risk and so do not address their contention regarding the need for expert testimony concerning causation.

Notably, the plaintiffs do not dispute that, under Massachusetts law, "a physician is not required to inform a patient of remote risks," Precourt, 481 N.E.2d at 1149; see also Kissinger v. Lofgren, 836 F.2d 678, 681-82 (1st Cir. 1988) ("[R]emote [risks] . . . are immaterial as a matter of law."). And we do not see how, without expert testimony, a reasonable juror could find that Meka's injury -- a pelvic fracture -- constituted more than a "negligible risk" of a forceps-assisted delivery, id. at 681, as we cannot see how the nature of the risk of that occurrence for the procedure in question is common knowledge, cf. McMahon v. Finlayson, 632 N.E.2d 410, 412-13 (Mass. App. Ct. 1994) (stating materiality of possible injury is question for jury once apprised of risk of injury).

In arguing otherwise, the plaintiffs direct our attention to Cook v. Iacono, 174 N.E.3d 329, 2021 WL 3889513 (Mass. App. Ct. 2021) (unpublished table decision). Cook, however, does not speak to the issue of informed consent at all. See id. at *1-3 (noting only that the district court had allowed the plaintiff's informed consent claim to go to trial). They also point us to Harrison v. United States, 284 F.3d 293 (1st Cir. 2002), but in that case, we did not have occasion to assess the

- 13 -

district court's conclusion that "the risks of [the alleged injury] were 'something more than negligible,'" as neither that determination nor the doctor's knowledge of that risk was contested on appeal.  Id. at 297, 298 n.3.  In addition, none of the other precedent or legal provisions plaintiffs invoke address the question of whether expert testimony is needed for them to meet their burden to show that the medical procedure in question here posed a more-than-negligible risk of a pelvic fracture.  We thus see no basis for reversing the District Court's grant of summary judgment to the defendants on the sole claim that is at issue in this appeal.

## III.

For the foregoing reasons, the judgment of the District Court is **affirmed**.